UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

XIANG LI,

                                    Plaintiff,

            -against-                                      5:07-CV-1302 (LEK/GHL)

MORRISVILLE STATE COLLEGE and
DAVID ROGERS, *Dean of School of*
*Business*, *Morrisvile State College*

                                    Defendants.



## MEMORANDUM-DECISION AND ORDER

On December 14, 2007, Plaintiff, *pro se* Xiang Li ("Plaintiff") initiated the instant

employment discrimination action against Defendants Morrisville State College and David Rogers

(collectively, "Defendants").  Compl. (Dkt. No. 1).  Plaintiff alleges that Defendants violated Title

VII of the Civil Rights Act of 1964, as amended, see 42 U.S.C. § 2000e *et seq.*, when, based upon

his race and national origin, they terminated his employment contract, undermined his performance,

refused to hire him for a tenure track position, and otherwise retaliated against him.  Compl. ¶¶ 4-7.

Plaintiff has sought on three occasions to amend his Complaint so as to add additional

defendants and, pursuant to 42 U.S.C. § 1983, to allege violations of his constitutional right to due

process.  See Dkt. Nos. 57, 64, 75.  In each case, leave to amend was denied.  Presently before the

Court are Defendants' second Motion for summary judgment (Dkt. No. 80); Plaintiff's appeal of a

December 29, 2009 Order by Magistrate Judge George H. Lowe denying him leave to amend his

Complaint (Dkt. No. 101); and Plaintiff's Motion to compel discovery pursuant to Federal Rule of

Civil Procedure 56(f) (Dkt. No. 95).

I.      **BACKGROUND**

   A.      **Factual Background**

Plaintiff is a Chinese man and a Canadian citizen.  He holds a Master's Degree in

Information Systems.  In August of 2005, Defendant Morrisville State College ("Morrisville" or

"the College") hired Plaintiff as an Assistant Professor in the Computer Information Technology

Department ("CIT"); he was terminated on May 19, 2006.  The basis for that termination and for the

College's failure to offer or interview Plaintiff for a tenure track position form the context of this

dispute.

Morrisville State College is one of 64 colleges operated by the State University of New York

("SUNY").  At all relevant times, Defendant David Rogers ("Rogers") was the Dean of the School

of Business at the College, having overall supervisory responsibility for that School.  In this

capacity, Rogers oversaw 25 full-time faculty members.  Plaintiff asserts that during the relevant

period, of these 25 faculty members, he was the only one who was non-white and the only non-U.S.

citizen.  Pl.'s Statement of Material Facts (Dkt. No. 104-1) ("Pl.'s SMF") ¶ 3.

According to the College, during 2005-2006, the CIT employed ten faculty members,

divided into two distinct categories: tenured faculty, of which there were two; and non-tenured

faculty, comprising the remainder.  The decision to hire faculty is typically made after a process

involving the solicitation of candidates, review by a search committee, interviews, review first by

the Dean and then the Provost, whose Office extends the offer to the chosen candidate.  Rogers Aff.

¶ 6 (Dkt. No. 80-4).  In some cases, however, employment offers for temporary positions are made

outside this process and without convening a search committee.  Id. ¶ 7.  In such cases, the offer is

extended directly by the Dean with consultation of the Provost.  Id.  According to the College, such

offers are for year-to-year employment, are subject to annual review, and "do not represent offers that extend to tenure-track positions."  Id.; Mills Aff. ¶ 3.

In January 2005, Plaintiff was interviewed for a tenure track position in the CIT, but the position was ultimately awarded to another candidate.  Mills Aff. ¶ 5.  That candidate resigned shortly before the fall 2005 semester.  In response, Dr. Kim Mills[1] telephoned Plaintiff, who was then working at Emory & Henry College as an Instructional Technologist, to ask if Plaintiff was interested in the position.  Id. ¶¶ 5-7.  Dr. Mills claims he made clear to Plaintiff that, while the position being offered was only temporary, a full search for the tenure track position would be conducted the following year, and a positive record of employment at the College would strengthen Plaintiff's candidacy for that position; Mills asserts he never told Plaintiff that by accepting the temporary position he would be entitled to the tenure-track position.  Id. ¶¶ 8-9.  Plaintiff characterizes his communication with Mills differently, alleging that the latter intentionally and deceitfully induced him into leaving his full-time position at Emory & Henry College by assuring him that "at the end of the academic year, the Department would conduct a search and Plaintiff would be said the best candidate."  Pl.'s SMF ¶ 10.

Following the conversation with Mills and various communications between Plaintiff and Rogers, College President Ray Cross extended Plaintiff an agreement letter (Dkt. No. 80-4, Ex. 2), offering Plaintiff an Assistant Professorship "effective September 1, 2005, such appointment to cease August 31, 2006."  The letter stated, "This is a temporary appointment subject to and in accordance with the laws of this State and the Policies of the Board of Trustees.  Please note that

---

[1] Dr. Kim Mills is an Associate Professor at Morrisville in the CIT, which is contained within the School of Business.  Dr. Mills' responsibilities include organizing search committees, conducting interviews, and related activities in the process of hiring new faculty.

Article XI, Title F and Article XIV, Title A of the Policies are particularly applicable to this

appointment."[2]  Id.  Plaintiff accepted the appointment by signing this letter on August 12, 2005.[3]

Id.

　　　　Plaintiff's initiation to Morrisville proved difficult.  Due to problems associated with

securing a TN visa which Plaintiff attributes to slow processing by SUNY, he missed orientation.

Plaintiff also had some trouble securing housing, and he experienced delays in getting a laptop and

textbooks, and in getting to observe other faculty members' interaction with students.  Pl.'s SMF ¶¶

15-17.  Upon arrival, Plaintiff was assigned to two 400-level capstone courses, which he claims was

unprecedented for a newly hired professor.  Id.  Defendants assert that whatever delays and

difficulties occurred, they were not attributable to Plaintiff's race or national origin.  Mills Aff. ¶ 13.

Plaintiff contends otherwise responding simply that as the only faculty member who was not white

and of United States national origin, he "was the only faculty member [for whom] Defendants and

Mills created so many difficulties."  Pl.'s SMF ¶¶ 16, 18.

　　　　Defendants assert that shortly after Plaintiff began teaching, Mills and Rogers began

receiving feedback from students complaining about Plaintiff's classroom demeanor and grading

policies, including allegations that he shouted at and, in one incident physically shoved a student.

--------

　　　[2] Article XI, Title F, § 1 concerns "Temporary Appointment" which is defined, *inter alia*, as "an appointment which may be terminated at any time."  See SUNY Policies of the Board of Trustees (Dkt. No. 80-4, Ex. 3).  Article XIV, Title A, § 1 adds that temporary appointments "may be terminated at will by the chief administrative officer of the college concerned. . . . There shall be no right of appeal from such a termination."  Id..

　　　[3] Plaintiff denies that the letter included the above-quoted provisions, see Pl.'s SMF ¶ 11; the agreement letter entered into the record (Dkt. No. 80-4, Ex. 3), which bears his signature, however, does include that language.

Mills Aff. ¶¶ 17-19; Rogers Aff ¶ 14; Dkt. No. 80-13, Exs. K, L.  Mills and Rogers met with

Plaintiff to discuss the incidents.  At one meeting Plaintiff allegedly remarked that he was

accustomed from his teaching experience in China to working with more motivated students, to

which Mills responded that Morrisville students may behave differently and less deferentially than

those Plaintiff taught in China.  Mills Aff. ¶ 20.  The three met several more times during the year to

discuss Plaintiff's performance, which Mills and Rogers found not to be a good fit for the College.

Plaintiff largely denies these allegations regarding student complaints and contends that the

allegations demonstrate Mills and Rogers' discriminatory attitude.[4]  Pl.'s SMF ¶¶ 19-21.

   In March 2006, the College publicly posted Plaintiff's temporary position as a tenure track

position, thereby soliciting candidate applications and effectively alerting Plaintiff that, if he desired

to apply, he would need to compete with others for the position.  The job notice included a

"Qualifications" section stating, "A strong record of industry experience and a Master's degree

required.  Ph.D. [sic] preferred."  Dkt. No. 80-13, Ex. V.

   Plaintiff continued to meet with Mills and Rogers to discuss his allegedly poor performance.

One such meeting occurred on April 4, 2006.  The parties disagree as to whether Plaintiff, at that

---

[4] Plaintiff admits to shouting at one student who he claims was trying to cheat, but asserts that she initiated the shouting.  At times, Plaintiff appears to deny that Defendants actually received complaints from other students, asserting that he did not shout at students, and Rogers and Mills were either exaggerating these incidents or falsifying them altogether; at other times he seems to acknowledge the complaints but blames his behavior on the fact that he did not get orientation training due to his visa being delayed and seeks to balance these complaints against other students' positive reviews of his teaching.  Plaintiff further argues that Defendants were at fault in finding credible students who did complain.  Pl.'s SMF ¶¶ 19-22; Pl.'s Resp. in Opp'n (Dkt. No. 104) at 7; Plaintiff Aff. (Dkt. No. 104-2) ¶¶ 20-24.  In any case, Plaintiff's outright denials in his opposition papers that he had shouted at students and that Defendants had not raised their concern about his behavior toward students prior to their summary judgment Motion contradicts his prior sworn testimony.  Plaintiff Dep. of Nov. 14, 2008 (Dkt. No. 80, Ex 6) at 27-34; Crim. Trial Tr. B (Dkt. No. 109, Ex. 3) at 34-35

time, inquired about extending his employment at the College; at some point, Plaintiff stood up, said

"End of conversation!, . . . walked out of the office and closed the door [] hard."  Li Aff. (Dkt. No.

104-2) ¶ 37.  Defendant's allege that Plaintiff returned briefly and threatened them; Plaintiff claims

that he only stated that he would "take action."  Mills Aff. ¶ 31; Rogers Aff. 20; Li Aff. ¶ 37.  On

May 19, 2006, Rogers informed Plaintiff that he would not be re-hired and was barred from campus.

Shortly thereafter, the College filled two tenure track positions in the CIT.  Plaintiff was not

interviewed.  Both successful applicants hold Ph.D.'s; the national origin of one of those new hires

is Taiwan, Republic of China, the other's national origin is the United States.  Rogers Aff. ¶ 24.

Plaintiff asserts a third person with only a B.A. and no teaching experience was also hired.  Pl.'s

SMF ¶ 36.

Following Plaintiff's discharge, Rogers, Mills, and other faculty began receiving, by email

and telephone, anonymous threats including death threats toward themselves and their families.

These continued over a period of eight months.  Plaintiff was arrested for these threats, and after a

jury trial, was convicted of eleven counts of transmitting death threats in violation of 18 U.S.C. §

875.  See U.S.A. v. Li, Case No. 5:07-cr-0272 (Dkt. No. 109) (sentencing Li to 114 months of

imprisonment, restitution, and supervised release).  Plaintiff maintains his innocence.

### B.     Procedural History

Plaintiff never filed a complaint with the College's Affirmative Action Office, but he claims

to have complained to the College administration.  On July 17, 2006, after being terminated, he filed

a complaint alleging discrimination with the State Division of Human Rights ("SDHR") and Equal

Employment Opportunity Commission ("EEOC").  The EEOC issued a Notice-of-Right-to-Sue

Letter on October 30, 2006.  Plaintiff initiated the instant action on December 14, 2007.  Defendants

moved for summary judgment on November 20, 2009.  Dkt. No. 80.

On November 30, 2009, in response to Defendants' Motion for summary judgment and four months after discovery closed, see Uniform Pretrial Scheduling Order (Dkt. No. 35) (setting discovery deadline of July 20, 2009), Plaintiff filed a Motion (Dkt. No. 83) requesting the issuance of subpoenas on two non-parties: his prior employer, Emory & Henry College, and his previous counsel, Wong, Wong, and Associates.  Plaintiff explained his rationale for this request in a separate Letter Brief (Dkt. No.90) wherein he alleged that information held by these parties, as well as that of the SDHR, which he also seeks to subpoena, is essential for him to respond to allegations in the Defendants' summary judgment motion.  Plaintiff additionally seeks records held by the College detailing the hiring dates of CIT faculty and student contact information.  Dkt. No. 95-1.

By Order dated December 29, 2009, Magistrate Judge Lowe found that "Plaintiff simply has failed to show that the materials being sought are relevant to the issues raised in the summary judgment motion.  However, in his opposition to that motion Plaintiff may submit to Senior Judge Kahn an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure."  Dkt. No. 92 at 1-2.  Plaintiff has now submitted an affidavit and Motion pursuant to Rule 56(f) requesting this Court reconsider the Magistrate Judge's determination, issue the third-party subpoenas, and stay the Defendants' Motion for summary judgment for at least five weeks after her receives the subpoenaed materials.  Dkt. No. 95.

In addition to his Motion to compel further discovery, on February 22, 2010, Plaintiff submitted a letter in which he expresses that he "strongly disagree[s]" with Magistrate Judge Lowe's February 9, 2010 Order (Dkt. No, 97) denying Plaintiff's third motion for leave to amend his Complaint (Dkt. No. 75).  In that proposed amended complaint (Dkt. No. 75-1), Plaintiff again

7

seeks to join various additional defendants and allege an additional due process claim pursuant to 42 U.S.C. § 1983.  In his February 9, 2010 Order, Magistrate Judge Lowe explained that, as with Plaintiff's previous attempts, in his third proposed amended complaint "Plaintiff again has failed to allege facts plausibly suggesting a constitutional violation by the persons he seeks to join."  Dkt. No 97 at 3.  In his letter, which the Court construed as a Motion to appeal an order of a magistrate judge, Plaintiff contends that 1) in his Memorandum of law in opposition to Defendants' summary judgment motion (Dkt. No. 104) (which was not filed at the time of his Letter Motion), he alleges facts plausibly suggesting a constitutional violation; 2) that the "Supreme Court does not require [him] to 'allege facts plausibly suggesting" such violation; and 3) requesting, that if this Court disagrees, that it specify how Plaintiff can fix the deficiency.

## II.    APPEAL OF THE MAGISTRATE JUDGE'S ORDER

In reviewing appeals of a magistrate judge's rulings, the Court is to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [and] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b).  Where, however, an objecting "'party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.'"  Farid v. Bouey, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (quoting McAllan v. Von Essen, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007) (citations and quotations omitted)).

8

Applying the above standard of review, and fully cognizant of Plaintiff's *pro se* status,[5] the Court finds the Magistrate Judge Lowe's Order must stand.  Plaintiff's objections are simply untenable: first, Plaintiff appears to argue that his Memorandum in opposition to Defendants' summary judgment motion includes facts that remedy deficiencies in his pleadings.  The sufficiency of Plaintiff's proposed amended complaint cannot depend on allegations contained in a separate response memorandum; rather, the amended complaint itself must contain a short and plain statement of the claim showing that Plaintiff is entitled to relief.  FED. R. CIV. P. 8(a).  Second, in precise contradiction to Plaintiff's contention, the Supreme Court has held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Thus, while Rule 8 "does not require heightened fact pleadings of specifics, it does require enough facts to 'nudge [the non-movant's] claims across the line from conceivable to plausible.'"  In re Elevator Antitrust Litig, 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570); see also Iqbal, 129 S. Ct. at 1953 (holding that Twombly expounded the pleading standard for all civil actions).

The Magistrate Judge identified and applied this clear precedent correctly in denying Plaintiff's proposed amended complaint.  While leave to amend "shall be freely given when justice so requires" FED. R. CIV. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Manson v. Stacescu,

---

[5] This Court affords *pro se* litigants special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  Thus, *pro se* pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they suggest."  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2nd Cir. 1994)).  Nevertheless, a litigant's "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law."  Id. (citation omitted).

11 F.3d 1127, 1133 (2d Cir. 1993), a court may deny a motion to amend for good cause "such as . . . futility of amendment." <u>Foman</u>, 371 U.S. at 182.  Thus, a trial court may deny leave to amend a complaint which even as amended would fail to state a cause of action.  <u>See</u> <u>Freeman v. Marine Midland Bank-New York</u>, 494 F.2d 1334, 1338 (2d Cir. 1974).

Plaintiff has neither articulated facts plausibly supporting claims against the additional Defendants, nor a plausible constitutional claim pursuant to 42 U.S.C. § 1983.  Plaintiff's proposed amended complaint (Dkt. No. 75-1) alleges Title VII and constitutional violations of due process by Defendants, as well as Kim Mills, Raymond Cross, James Van Riper, and Richard Carreno whom he seeks to join.  As to Cross, Van Ripper, and Carreno, Plaintiff states only that he scheduled meetings with these individuals to complain about what he viewed as disparate treatment by Mills and Rogers.  Dkt. No. 75-1 ¶ 9.  He states that he was given the impression that the College could not help him.  He does not otherwise mention these individuals in the proposed pleading and fails to allege a cause of action against them.

Plaintiff asserts that Mills intentionally deceived him into leaving his prior employment and later distorted his allegations, provided no meaningful support, and undermined his performance.  Plaintiff asserts that the above actions violated his property rights under due process by ultimately depriving him of employment.  Plaintiff, however, has no property interest in such employment, and therefore cannot sustain a due process claim against Mills.  <u>See</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564 (1972).  Thus, the proposed amended complaint could not survive a motion to dismiss, granting leave to so amend would be futile and was properly denied.

Finally, while the Court understands the difficulties *pro se* litigants may encounter in formulating pleadings that are sufficient, it cannot provide the legal advice that Plaintiff requests.

Plaintiff's Appeal of Magistrate Lowe's Order is denied.

### III.   SUMMARY JUDGMENT AND RULE 56(f) MOTIONS

#### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Courts applying this standard must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted).  The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins.

Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  "Factual allegations that might otherwise

defeat a motion for summary judgment will not be permitted to do so when they are made for the

first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her

own prior deposition testimony."  Brown, 257 F.3d at 251 (citation omitted).

Where an employment discrimination case turns on the intent of a party, a trial court should

be particularly cautious before granting the "drastic provisional remedy" of summary judgment.

Gallo v. Prudential Residential Servs, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citations

omitted).  In such cases, "affidavits and depositions must be carefully scrutinized for circumstantial

proof which, if believed, would show discrimination."  Id.  "Finally, the trial court's task at the

summary judgment motion stage of the litigation is carefully limited to discerning whether there are

any genuine issues of material fact to be tried, not to deciding them."  Id.

A trial court may decline to grant summary judgment if the nonmoving party "shows by

affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  FED.

R. CIV. P. 56(f).  In this Circuit, pursuant to Rule 56(f), a party claiming to be unable to produce

evidence in opposition to a summary judgment motion must file an affidavit that demonstrates:

> 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be
> obtained; and 2) how those facts are reasonably expected to create a genuine issue of material
> fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were
> unsuccessful.

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985).

"Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow

additional discovery 'if it deems the request to be based on speculation as to what potentially could

be discovered.'"  Nat'l Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 117 (2d Cir. 2001) (quoting

12

Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)).  In considering a Rule 56(f)

motion, a district court must ensure that "the discovery sought [is] material to the opposition of the

summary judgment motion."  Sage Realty Corp. v. Ins. Co. of North America, 34 F.3d 124, 128 (2d

Cir. 1994) (citation omitted).

   While a "bare assertion that the evidence supporting plaintiff's allegations is in the hands of

the moving party is insufficient to justify the denial of summary judgment, . . . a party against which

summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within

the control of his adversaries.'"  Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009)

(citing Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) for the

proposition that "summary judgment should not be granted against nondilatory party who has been

'denied reasonable access to potentially favorable information'"); see also Trebor Sportswear Co.,

Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (citations omitted).  "Since

summary judgment is a drastic device, it should not be granted when there are major factual

contentions in dispute.  This is particularly so when . . . one party has yet to exercise its

opportunities for pretrial discovery."  Nat'l Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975)

(internal quotations and citations omitted).  While "[t]he nonmoving party should not be

'railroaded' into his offer of proof in opposition to summary judgment [and] must have 'had the

opportunity to discover information that is essential to his opposition' to the motion for summary

judgment . . . the trial court may properly deny further discovery if the nonmoving party has had a

fully adequate opportunity for discovery."  Trebor Sportswear, 865 F.2d at 511 (quoting Celotex,

477 U.S. at 326; Liberty Lobby, 477 U.S. 242; additional citations omitted).

   As an initial matter, the Court notes that this is not a case in which Defendants filed their

Motion for summary judgment prior to Plaintiff's having the opportunity to conduct discovery.

Rather, Defendants filed that Motion approximately four months after discovery closed.  While this

fact is not dispositive of Plaintiff's Rule 56(f) Motion, it properly figures into this Court's analysis

and ultimate denial of that Motion.  See Trebor Sportswear, 865 F.2d at 511; Cusamano v. Sobek,

604 F. Supp. 2d 416, 505 (N.D.N.Y. 2009).  The Court will address the specific requests of

Plaintiff's Rule 56(f) Motion as it relates to Defendants' Motion for summary judgment, to which it

now turns.

### B.    Disparate Treatment

Title VII of the Civil Rights Act of 1964 states, in relevant part:

> It shall be an unlawful employment practice for an employer–
> 1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against
> any individual with respect to his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color, religion, sex, or national origin

42 U.S.C. 2000e-2(a)(1).  To establish an unlawful employment practice based on impermissible

considerations of race or national origin, a plaintiff must "demonstrate[] that race, color, religion,

sex, or national origin was a motivating factor for any employment practice, even though other

factors also motivated the practice."  42 U.S.C. 2000e-2(m).

Plaintiff's disparate treatment claim is analyzed under the burden shifting framework

established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-08 (1993).  Under this framework, a plaintiff

must first establish, by a preponderance of the evidence, a *prima facie* case for discrimination.  Tex.

Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  For purposes of a Title VII

disparate treatment claim, a plaintiff may do so by demonstrating: "1) that he belonged to a

protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002)).  The plaintiff's burden of establishing a *prima facie* case for discrimination "is not onerous. . . .[but] serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Burdine, 450 U.S. at 253-54; see Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997) (noting that the burden of establishing a *prima facie* case is "minimal").

If the plaintiff establishes a *prima facie* case of discrimination, "the employer is required to offer a legitimate, nondiscriminatory business rationale for its conduct." McDonnell Douglas, 411 U.S. at 802; Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).  Where a defendant offers this showing, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Burdine, 450 U.S. at 253 (citing McDonnell Douglas Corp., 411 U.S. at 802).  "To defeat summary judgment within the McDonnell Douglas framework . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001) (internal quotations and citations omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

Courts considering Title VII claims in the context of college's denying tenure to professors

make clear that "[the College] alone has the right to set its own criteria for promotion and then to evaluate a candidate's fitness for promotion under them." <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 455 (2d Cir. 1999) (footnote and citation omitted). Thus, the Court's review "is narrowly limited to determining whether an illegitimate discriminatory reason played a motivating role in the employment decision." <u>Id.</u> at 456; <u>see also</u> <u>Lieberman v. Gant</u>, 630 F.2d 60, 67 (2d Cir. 1980).

      *(I)*     *Prima Facie Case*

      The parties do not dispute that Plaintiff satisfies the first and third prongs of a *prima facie* case of discrimination: as a Chinese man and foreign national, Plaintiff undeniably falls within a protected class; he clearly suffered an adverse employment action when his position at Morrisville was not renewed and when he was not hired for one of the tenure positions in his prior Department. Defs.' Mot. Summ. J. at 9. As for the second prong, Plaintiff's qualification for the position he held is arguable. Undoubtedly, his education and work experience indicate that he is appropriately qualified to teach certain classes in the CIT Department. Plaintiff admits, however, that he was not qualified to teach the 400-level courses that were assigned to him, but he contends that the allegedly unprecedented move of assigning such courses to a new professor is itself evidence of the Defendants' discriminatory motive toward him. Pl.'s Opp'n Mem. 8-10. The College asserts that, in hiring a professor, they need an individual qualified to fill the needs of the Department, including teaching these courses. While Defendants thereby express a reason possibly justifying their refusal to re-hire Plaintiff, the Court finds that, based on his education and experience, Plaintiff has met his minimal burden in establishing a *prima facie* case with regard to the issue of qualification.

      The same cannot be said with regard to the remaining element of a *prima facie* case, that the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination.

Even when viewing the facts in the light most favorable to Plaintiff, Plaintiff provides no plausible

support for his contention that the delays in his securing a visa, housing, training, or supplies, the

assignment of two upper-level courses to him, or the administration's allegedly one-sided response

to complaints by students, were the result of discriminatory intent.  Plaintiff candidly admits that no

direct evidence of such intent exists, for example, in the form of statements made by Defendants

revealing that their actions were related to Plaintiff's race or national origin.[6]  Li Dep. of June 24,

2009 (Dkt. No. 80, Ex 8) at 56.  Plaintiff instead relies on indirect evidence, particularly 1) the lack

of racial or national diversity among CIT faculty during Roger's tenure; 2) that subsequent to

Plaintiff's termination, diversity in hiring increased; 3) the fact that Plaintiff, as a Chinese man and

foreign national, experienced various difficulties not shared by other faculty;

     Plaintiff's claim that he was the only non-white faculty and only foreign national does not

alone give rise to an inference of discrimination.  Among such a small population, the absence racial

or national diversity cannot create an inference that Plaintiff's adverse experiences resulted from

unlawful discrimination.  See Pollis v. New School for Social Research, 132 F.3d 115, at 121-22

(2d Cir. 1997).  The same holds true for Plaintiff's claim that racial bias is evidenced by the fact that

hires made subsequent to Plaintiff's termination included at least one faculty member of Chinese

origin.  The fact that Defendants hired a woman of Chinese origin to fill a position that Plaintiff

asserts he was denied because of his Chinese origin does not create an inference of unlawful

_____

    [6] Plaintiff does allege that one statement by Rogers is direct evidence of discriminatory motive, namely his description of one of the newly-hired faculty members as being from Taiwan, Republic of China.  Rogers Aff. ¶ 24.  Plaintiff's assertion could be construed as a claim that Rogers discriminates between Taiwanese and mainland China.  See  Pl.'s Resp. in Opp'n at 11-12. However, Plaintiff offers no plausible support for this claim, nor may he defeat a motion for summary judgment based on an unsupported allegation not previously raised in his pleadings.

discrimination.

Even were the Court to find that Plaintiff successfully alleges a *prima facie* case of disparate treatment, Defendants have met their burden under the <u>McDonnell Douglas</u> framework by alleging a nondiscriminatory basis for the adverse actions.  They have done so by explaining that their decision to fire and not re-hire Plaintiff followed complaints by students, assessments of his abilities as deficient even after multiple meetings to discuss his performance, and insubordination showed by Plaintiff towards his superiors by, for example, storming out of meetings.  Defendants further assert that they need a professor who is able to teach the 400-level courses and Plaintiff, by his own admission, is unqualified to do so.  Plaintiff has failed to rebut these explanations as pretext.

As noted, Plaintiff's alleges that he was assigned upper-level courses and experienced delays in getting his visa, housing, supplies, and training as a result of Defendants' discriminatory treatment of him.  He supports this allegation simply by stating that he was the only faculty member who experienced such setbacks and he was the only non-U.S. citizen and Chinese faculty member. Plaintiff's argument is insufficient to raise an issue of material fact and preclude summary judgment in favor of the Defendants.  Contending that Defendants' proffered justifications are pretext, Plaintiff, in his opposition to Defendants' Motion, denies that there was conflict between himself and students, arguing that some or many students thought highly of him.  Plaintiff, however, cannot escape summary judgment simply because some students may well have appreciated his performance.  Defendants allege that others complained to them.  Defendants need not show that they made the wisest business choice in firing Plaintiff and not re-hiring him; they need only give a lawful reason for their action.  <u>Dister v. Cont'l Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment . . . is insufficient to establish a

genuine issue of fact as to the credibility of the employer's reasons.").

Moreover, Plaintiff admits that he was "insubordinate" in his last meeting with Rogers and Mills, ending the meeting abruptly and slamming the door on his way out. Li Aff. ¶ 37. This in itself is a legitimate reason to terminate his employment and not re-hire him. Matima v. Celli, 228 F.3d 68, 79-80 (2d Cir. 2000); Bush v. Fordham Univ., 452 F. Supp. 2d 394 (S.D.N.Y. 2006).

Finally, Plaintiff's denial that there was tension between him and the students, that he had shouted at students, and that Defendants' never confronted him about these allegations prior to filing their summary judgment motion is in contradiction with his prior statements. Pl.'s SMF 19-22; Li Dep. of Nov. 14, 2008 (Dkt. No. 80, Ex 6) at 27-34; Crim. Trial Tr. B (Dkt. No. 109, Ex. 3) at 34-35. A party cannot create a genuine issue of material fact by submitting an affidavit contradicting prior sworn testimony. See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) (citation omitted).

Perhaps anticipating this result, Plaintiff seeks, through his Rule 56(f) Motion, additional discovery that he asserts is relevant to his disparate treatment claim. Specifically, he seeks information from Emory & Henry College regarding the length of his employment; student records so that he can produce interrogatories that demonstrate that some students found him qualified and professional; faculty records; and documentation from his former attorneys. Dkt. No. 95.

Plaintiff first requests that this Court issue a subpoena compelling Emory & Henry College to produce documents confirming the terms of his employment, and specifically those supporting his contention that his position was there was pursuant to a five-year grant. Plaintiff explains that this additional discovery is necessary and appropriate in the wake of Defendants' allegation, contained in their Motion for summary judgment, that his position at Emory & Henry was for one

19

year only.  Plaintiff explains that the subpoenaed documents will let him prove the falsity of this allegation, as well as to suggest that he left that position only because Kim Mills made a misleading statement inducing Plaintiff to believe that he would receive a permanent position at Morrisville.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To support his Rule 56(f) Motion, Plaintiff must therefore show how the requested information raises an issue of material fact.  Burlington Coat Factory, 769 F.2d at 926. The explanations Plaintiff provides fail to do so.  First, Plaintiff seeks discovery from Emory & Henry to support a due process claim against Dr. Mills.  Mills, however, is not a party, and Plaintiff has not plead a due process claim, as his proposed amended complaint has been dismissed.  Further, even if Plaintiff's position at Emory & Henry College was permanent, that fact is immaterial to the issue of whether the Defendants held discriminatory intent towards Plaintiff based on his race or national origin.  Thus, Plaintiff's Motion to compel discovery from Emory & Henry College is denied.

Defendants have produced the requested materials relating to the hire dates of faculty members employed during the 2003-2005 academic years in the Computer & Information Technology Department at Morrisville State College.  See Dkt. No. 96 Ex. B.  Plaintiff contends that this disclosure is incomplete because 1) no data after 2005 is included despite what Plaintiff alleges is a change in hiring practices that began in 2006 after he had filed his discrimination complaint; 2) it includes only information on faculty within the Computer & Information Technology Department rather than the School of Business of which Defendant Rogers is Dean; and 3) it contains no race data on the faculty.  Pl.'s Reply in Supp. of Rule 56(f) Mot. (Dkt. No. 99) at 9.

Plaintiff's objections are without legal merit.  Plaintiff's Affirmation attached to his Rule 56(f) Motion states that he seeks "[t]he hire dates of faculty members at the Computer & Information Technology Department."  Dkt. No. 95-1 at 2.  He does not ask for the hire dates of other faculty outside that Department, nor does he request race data.  Further, in explaining the relevance of such data, Plaintiff explicitly states that the information is necessary for him to "demonstrate the disparate treatment between him and all other faculty members hired *before* him." Id. (emphasis added).  Such justification cannot be construed to extend to faculty hired after Plaintiff's termination.  Finally, as noted, where data is used to show disparate treatment by evidencing wide trends suggestive of unlawful discrimination, that data must include a large sampling.  Pollis v. New School for Social Research, 132 F.3d 121-22.  Even assuming Plaintiff had requested the race data of faculty hired during his term of employment up to the present, given the size of the CIT faculty, the sample size he would receive is much too small to support his disparate treatment claim.

Plaintiff further seeks the contact information of students who were enrolled in his classes during 2005-2006 so that he can serve interrogatories on them, presumably in an effort to prove that many found him qualified and professional or support his contention that he did not scream at students in class.  In light of the above discussion and Plaintiff's own admissions, see, e.g., Li Aff. ¶ 37, such interrogatories could not raise issues of material fact sufficient to defeat summary judgment.  Additionally, Plaintiff presents no justification for the lateness of this discovery request.  On May 19, 2009, prior to the close of discovery, Defendants raised their objection to Plaintiff's request for student information, citing 20 U.S.C. § 1232g.  Dkt. No. 62.  On January 11, 2010,

months after the discovery deadline, Plaintiff first raised his objection to Defendants' legal basis for

withholding the materials.  Dkt. No. 95.  Plaintiff had a reasonable opportunity to make his

objections known during the discovery period.  His request is untimely and provides no basis to

further stay this litigation.

Finally, Plaintiff seeks phone records and ISP computer forensic reports from Wong, Wong,

and Associates, Plaintiff's counsel in his criminal trial, which he asserts will show that Defendants'

lawyers acted in bad faith, presumably during both the criminal and civil trials, and would prevent

them from raising issues related to his criminal conviction.  Plaintiff's request is too speculative and

immaterial to justify this Court's compelling Wong, Wong and Associates to produce the requested

materials or to withhold summary judgment to allow for additional discovery.  See Nat'l Union Fire

Ins., 265 F.3d at 117.

**C.     Retaliation**

Title VII of the Civil Rights Act of 1964 provides, in part, "[i]t shall be an unlawful

employment practice for an employer to discriminate against any of his employees or applicants for

employment . . . because he has made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing."  42 U.S.C. 2000e-3(a).

Retaliation claims alleging violations of the above provision are analyzed under a three step

burden shifting analysis similar to that used in disparate treatment claims.  See Quinn v. Green Tree

Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166,

173 (2d Cir. 2005).  A *prima facie* case of retaliation requires a plaintiff to offer sufficient evidence

for a rational trier of fact to conclude that 1) plaintiff engaged in a protected activity; 2) that the

defendant knew of the activity; 3) that plaintiff was subjected to an adverse employment action; and

4) a causal connection exists between the protected activity and the adverse employment action. McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001).

Plaintiff's claim appears to be that he was terminated or alternatively, not considered for rehire, because he had complained to the administration, SDHR, and/or EEOC about the College's allegedly discriminatory treatment of him based on his race and national origin. Plaintiff did not make any such claim to the Affirmative Action Office at the College. He claims, however, that he did complain to the College administration. Assuming that is true, Plaintiff has nevertheless failed to allege any facts suggesting that his termination was related to that protected activity.

As above, even had Plaintiff made out a *prima facie* case of retaliation, Defendants have met their burden in offering a legitimate, non-retaliatory reason for the adverse employment action, see Quinn, 159 F.3d at 768, namely that Plaintiff was not performing to the standards required by the College, that students were complaining, and that Plaintiff was insubordinate to his superiors. The burden thus shifts back to Plaintiff to show that retaliation was a substantial reason for the adverse action. Jute v. Hamilton Sundstrand Corp., 420 F.3d at 173 (citing Fields v. New York State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 120-21 (2d Cir. 1997)). Plaintiff cannot sustain this burden as he offers no evidence that Defendants decision to terminate and not re-hire or interview him was made in response to his having engaged in such activity. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

In his Rule 56(f) Motion, seeks information from the SDHR regarding his complaint with that Department. Plaintiff only initiated a claim with SDHR after his termination. It is therefore impossible that his being fired was the result of his filing such a claim. Plaintiff asserts, however, that before filing a complaint, he contacted EEOC and SDHR with disparate treatment allegations

against the College prior to his receiving a termination notice.  Pl.'s Opp'n Mem. (Dkt. No. 104) at

1.  He seeks documentation to prove this.  Even if true, however, Plaintiff has not alleged that

Defendants had knowledge that Plaintiff contacted these offices.  Thus, there is no justification to

compel this additional discovery nor to withhold summary judgment.


IV.     **CONCLUSION**

        Based on the foregoing discussion, it is hereby

        **ORDERED**, that Plaintiff's Motion appealing Magistrate Judge Lowe's February 9, 2010

Order (Dkt. No. 101) is **DENIED**; and it is further

        **ORDERED**, that Plaintiff's Motion seeking to compel additional discovery pursuant to

Federal Rule of Civil Procedure 56(f) (Dkt. No. 95) is **DENIED**; and it is further

        **ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 80) is **GRANTED**;

and it is further

        **ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED in its entirety with

respect to all parties and all claims**; and it is further

        **ORDERED**, that the Clerk serve a copy of this Order on the parties.

        **IT IS SO ORDERED**.


DATED:          July 09, 2010
                Albany, New York

                                          Lawrence E. Kahn
                                          U.S. District Judge